UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Lisa Murray,

                        Plaintiff,            13-CV-06051 T

           v.                            **ORDER**

Carolyn W. Colvin,
Commissioner of Social Security

                        Defendant.
_____

## <u>INTRODUCTION</u>

Lisa Murray("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits("DIB") and Supplemental Security Income ("SSI").  Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), Milagros Farnes, was not supported by substantial evidence in the record and was based on erroneous legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)") seeking to reverse the judgement of the Commissioner and remand for calculation of benefits, or alternatively, for further administrative proceedings.  The Commissioner opposes the motion and cross-moves for judgment on the pleadings.

For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision.

Therefore, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on February 8, 2010, alleging disability due to migraine headaches, depressive disorder, stomach problems, nerve damage in the left leg, and wrist pain with an onset date of November 14, 2008. Transcript of the Administrative Proceedings at 10, 15, 233-34 (hereinafter "T."). She also filed an application for supplemental security income on February 19, 2010 alleging the same disabilities with the same onset date. T. 10. The claims were initially denied on June 7,2010. T. 10. Plaintiff subsequently requested a hearing before an ALJ, which took place on June 22, 2011. T. 10. Plaintiff appeared, with counsel, via video from Rochester, New York, for a hearing held in Baltimore, Maryland. T. 10. In addition to the plaintiff, Vocational Expert, Bassey A. Duke, ("the VE") also testified. T. 10.

In a decision dated July 5, 2011, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. T. 20. Plaintiff requested review of the ALJ's decision on September 2, 2011. T. 135. The Appeals Council denied Plaintiff's request on December 6, 2012, rendering the ALJ's decision the final decision of the Commissioner. T. 1-3. Plaintiff subsequently filed this action on February 1, 2013.

**BACKGROUND**

Plaintiff is a fifty-one year old high school graduate. T. 31, 208. She worked most recently as a secretary at an accounting firm until November 2008.  T. 194. Previously, She worked in medical transcription, as a day care provider, and as a secretary at an advertising agency.  T. 194.

At the time of the hearing, Plaintiff spent a typical day taking care of her three year old daughter, cooking, washing dishes, checking email, and watching television.  T. 186.  She was also able to do some vacuuming, sweeping, and dusting.  T. 188.

I.  Medical History

Plaintiff began treatment for depression with her primary care physician, Dr. James Slobard, M.D., on August 22, 2005.  T. 318. In December 2008, she was prescribed Prozac.  T. 347.  At some point in 2008 Plaintiff received psychotherapy every two weeks for two months.  T. 374.  In January 2010, Plaintiff saw Physician Assistant (PA), Chelsea Coakley, for depression.  T. 370.  She had run out of Prozac "months and months" before and PA Coakley re-prescribed it.  T. 372.  In May 2010, psychologist, Dr. Hochberg, assessed Plaintiff's record for the Social Security Administration ("SSA").  T. 382.  He determined that Plaintiff's depression did not satisfy the diagnostic criteria of disability under The Social

Security Act ("the Act") 20 C.F.R. Part ("Pt.") 404, Subpart ("Subpt.") P, Appendix ("App.") 1 ("the Listings").[1]  T. 385.

On December 23, 2010, Plaintiff again visited PA Coakley stating that while her depression was being treated by the Prozac effectively, she was still anxious. T. 464. PA Coakley prescribed Celexa in addition to the Prozac.  T. 464-66.  One week later, Plaintiff sought therapy from social worker, Susan San Filippo L.C.S.W., and stated that Prozac had not been much help to her in the past.  T. 411.  She saw San Filippo again once in January and once in February 2011.  T. 413.

Plaintiff also has a history of headaches.  T. 347.  At the time of her application for disability, Plaintiff was taking Prozac for her depression and Advil or Motrin for her migraines.  T. 374, 397.  She was not in therapy, and she has never been psychiatrically hospitalized.  T. 374.

During Plaintiff's January 2010 visit with PA Coakley, she also discussed a problem with her wrist.  T. 370-72.  She complained of pain while typing and was concerned about having carpal tunnel.  T. 370.  PA Coakley discussed testing options including nerve conduction studies, but Plaintiff declined.

---

[1] Specifically, the ALJ assessed Listing 12.04, Affective Disorders. The Act defines Affective Disorders as, "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."

T. 372.   In May 2010, Dr. Karl Eurenius, M.D., conducted a consultative examination of Plaintiff for the SSA.   He stated in his Medical Source Statement that "she is mildly limited in handling objects due to recent forearm tendinitis." T. 399.

Additionally, Plaintiff has a history of stomach and bowel issues.   In June 2009, Plaintiff complained of rectal soreness and bleeding two different times.   T. 358, 360-61.   A trip to the Emergency Department ("ED") was recommended.   T. 358.   In January 2010, Plaintiff called a nurse to report vomiting (once with a lot of blood) and diarrhea.   T. 368.   A visit to the ED was again recommended.   T. 368.   Plaintiff failed to visit the ED.   T. 455. In September 2010, Plaintiff was prescribed Omeprazole for her abdominal issues.   T. 456.   Dr. Eurenius diagnosed "stomach problems including lactose intolerance and symptoms suggestive of hiatal hernia" in his Medical Source Statement.   T. 399.   He did not indicate that this caused any work related limitations. T. 399.

   II.   Plaintiff's Hearing Testimony

Plaintiff testified that she last worked as a secretary at an accounting firm in 2008, but she quit because of her depression. T. 34.   Prior to that, she worked as a medical transcriptionist and a day care provider.   T. 35.

Although Plaintiff had the ability to drive, she did not drive because she did not have a vehicle. T. 38-40. She lived with her

adult daughter and her three year old daughter.   T. 41. Plaintiff's older daughter helped her to cook, clean, and take care of her younger daughter.  T. 41.

Plaintiff testified that she was unable to work because of her depression, migraines, and stomach issues.  T. 36.  She missed a great deal of work in her secretarial position due to her medical issues, and she testified that her life situation has worsened, exacerbating her conditions. T. 36. Plaintiff uses medication to control her depression and anxiety.   T. 36-38.   She has tried Prozac and Celexa.  T. 37-38.  She declined to try Lithium due to possible side effects, and she testified that she does not know how well the other prescriptions are helping as she does not feel better.  T. 38.  She was on 30 milligrams of Prozac at the time of the hearing.  T. 38.

Plaintiff's socialization is extremely limited.  She testified that her anxiety causes crying, nervousness, stomach issues, worry, and nervousness.   T.44.   She is no longer interacting with her friends, and she no longer takes her small child out into the front yard to play.  T. 41.  She stated that she is "isolating."  T. 41-42.

Plaintiff also testified that her stomach issues cause her to allot extra time to use the restroom prior to leaving her house. T. 42.   She was not taking medication for the stomach issues. P. 43.

6

When asked if there were other physical limitations aside from the anxiety and stomach issues, the Plaintiff answered that her only other limitation is an inability to lift over 30 pounds. T. 47.

III.  <u>Vocational Expert Testimony</u>

VE, Basse Duke, an impartial vocational expert, testified that Plaintiff had past work experience as a daycare provider, a medical transcriptionist, and a receptionist. T. 48.  The ALJ asked the VE to consider a hypothetical individual of the same age, education, and work experience as the Plaintiff with no exertional limitations, needing a low stress environment with occasional decision making and changes in work setting, occasional interaction with coworkers, no production or pace work, and no interaction with the public. T. 48.  The VE testified that such an individual could not perform any of Plaintiff's previous work and there would be no transferrable skills.   T.48.   The VE went on to testify that Plaintiff would be able to work as a router clerk, a photocopy machine operator, or a mail clerk, non-postal.  T. 49.

The ALJ also asked the VE to consider a hypothetical with the additional restrictions of being able to work at a light exertional level and needing to be reminded of tasks two times per day. T. 50.  The VE testified that such an individual could perform work in the national and local economies, as a stock checker for apparel. T.50.

Plaintiff's attorney posed hypotheticals to the VE regarding a person who was off-task 20 percent of the day or who would miss 3 days of work per month, and the VE testified that such a person would not be able to obtain any work in the national or local economies.   T.73.

### **Legal Principles**

I.  <u>Standard of Review</u>

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Machadio v. Apfel</u>, 276 F.3d 103, 108 (2d Cir. 2002). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). "[I]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002). However, the district court must independently determine whether the Commissioner's decision applied the correct legal standards in

determining that the claimant was not disabled. <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.").

II.   <u>Five-Step Sequential Evaluation</u>

To be considered disabled within the meaning of the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. <u>Id.</u>, § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows the five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520; <u>see also</u>, <u>e.g.</u>, <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). The burden of proof lies with the claimant on steps one through four to show that her impairment or combination of impairments prevents a return to previous employment. <u>Berry</u>, 675 F.2d at 467. If the claimant meets that burden, the Commissioner bears the burden at step five of establishing, with specific reference to the medical evidence, that the claimant's impairment or combination of

impairments is not of such severity as to prevent her from performing work that is available in the national economy. Id.; 42 U.S.C. § 423(d)(2)(A); see also, e.g., White v. Secretary of Health and Human Servs., 910 F.2d 64, 65 (2d Cir. 1990). In making the required showing at step five, the ALJ must consider the claimant's residual functional capacity, along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); see also, e.g., State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990).

## The ALJ's Decision

I.  Step One

The ALJ found that Plaintiff had not engaged in SGA since November 14, 2008, the alleged onset date. T.12.

II.  Step Two

At the second step, the ALJ found Plaintiff had the following severe impairments: chronic migraine headaches and depressive disorder. T.12 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ found that the Plaintiff's stomach problems were not "severe" within the meaning of the Act, because they did not cause a limitation that interfered with her ability to perform work related activities. T. 13.

III.  Step Three

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or

10

medically equaled the criteria of an impairment contained in the the Listings. Specifically, the ALJ analyzed Listing 12.04 (Affective Disorders) and considered Plaintiff's migraine headaches, wrist impairment, stomach complaints, and obesity. See T.13-16.

To meet or medically equal Listing 12.04, Plaintiff's anxiety related disorder must be characterized by at least a "marked" degree of limitation in at least two of the three "paragraph B" criteria (restrictions in activities of daily living ("ADLs"); difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace); or at least a "marked" degree of limitation in one of the "paragraph B" criteria and repeated episodes of decompensation. See 20 C.F.R. § 404.1520a(d)(2); Pt. 404, Subpt. P, App. 1, Sec. 12.06(B). In the alternative, Plaintiff can satisfy Listing 12.04 by meeting the requirements of paragraph C, which requires decompensation, potential decompensation, or inability to function outside a highly supportive living arrangement or outside the area of the claimant's home. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04(C).

The ALJ found that Plaintiff's mental impairment did not satisfy Listing 12.04(B). T.13-14. Plaintiff testified that she can cook, clean, care for pets, and provide childcare for her toddler. T.13. The ALJ found that Plaintiff had difficulties with relating to others. T.13. As the ALJ found, Plaintiff is

11

uncomfortable going out of the home, has difficulty dealing with her child's father and her older daughter, and does not talk to any friends.  T. 13.  Additionally, the ALJ found Plaintiff had moderate difficulty with regard to concentration, persistence, and pace.  T. 13.  Lastly, the ALJ found, there was no evidence of any episodes of decompensation to satisfy Listing 12.04(C) and she is able to function outside of the home normally.  T. 14.

In the next step, the ALJ considered Plaintiff's physical symptoms.  T. 13, 15-16.  Starting with Plaintiff's obesity, the ALJ found that it does not meet or equal any Listings either alone or when considered with Plaintiff's other impairments.  T. 13. Additionally, The ALJ found that there was no objective finding of carpal tunnel syndrome and that her wrist pain stopped moments after typing.  T. 15.  Thus, he found no severe impairment.  T. 15. Next, the ALJ found that Plaintiff's migraines were hormonal, sporadic, and conservatively treated (noting a lack of hospitalization).  T. 16.  Lastly, the ALJ found that Plaintiff's stomach problems were sporadic and conservatively treated.  T. 16. The ALJ determined that these physical impairments, taken alone or in connection with the mental impairments, do not render Plaintiff disabled.  T. 16.

After determining that Plaintiff's impairments did not singly, or in combination, meet or medically equal a Listed impairment, the ALJ found that Plaintiff retained the residual functional capacity

("RFC") to work in a low stress environment with occasional decision making, occasional changes in work setting, occasional interaction with co-workers, and no production pace.[2]  T.14.  In addition, the ALJ found that Plaintiff was unable to interact with the public and must be reminded of her task at least twice daily. T. 14.  As discussed further below, Plaintiff contends that the ALJ erred in several respects in assessing her RFC, including failing to find Plaintiff's wrist and stomach impairments were severe impairments.

IV.  Step Four

At step four, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work and that she had no transferrable skills.  T. 18.

V.  Step Five

The ALJ determined at step five that, considering Plaintiff's age, education, and RFC, she was capable of performing in occupations with positions existing in significant numbers in the national economy.  T.19-20.  The ALJ relied on the VE's testimony

_____

[2] Thus, the ALJ found that Plaintiff has the capacity to do light work with some limitations. As defined by the regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Light work often involves standing on and off, for a total of approximately 6 hours of an 8-hour workday. 20 C.F.R. § 404.1567(b); see also SSR 83-10.

about several representative occupations Plaintiff could perform (stock checker, light exertion; photocopy machine operator, light exertion; routing clerk, light exertion; and mailing clerk, light exertion) with positions nationally and in New York.   T.19. Although Plaintiff cannot perform the full range of light work, due to the limitations imposed by her impairments, the ALJ found that a finding of "not disabled" was appropriate in light of her age and education.   T.20.

## Plaintiff's Contentions

Plaintiff contends that (1) the ALJ erred when he found Plaintiff's wrist and stomach impairments were not severe impairments; (2) the ALJ's RFC determination was not supported by substantial evidence because his restriction that Plaintiff be reminded of her task twice daily is overly vague, and he did not make a finding as to Plaintiff's ability to sustain regular and consistent employment; and (3) the ALJ erred at step five by asking the VE a question based on erroneous information rendering the VE's assessment invalid.

I.   The ALJ Did Not Err in Assessing Plaintiff's Wrist and Stomach Impairments.

First, Plaintiff claims that the ALJ failed to "mention" Plaintiff's wrist impairment at both step two and three.   As Plaintiff points out, "[o]mission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in

14

his residual functional capacity determination." Plaintiff's Memorandum of Law at 7 (citing <u>Tryon v. Astrue</u>, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012)). Although the ALJ did not mention the wrist impairment in step two, he stated the following in step three when determining Plaintiff's RFC: "No examinations revealed any objective finding of carpal tunnel...she was mildly limited in handling objects due to recent forearm tendinitis[3]...[t]hough the claimant may suffer a degree of limitation due to migraine headaches *and her other physical complaints*, the conditions do not render her disabled." T. 15-16 (emphasis added). Therefore, the Court finds that the ALJ's failure to mention the wrist impairment in step two was harmless. <u>See</u> <u>Tryon</u>, 2012 WL 398952, at *4 ("As the ALJ proceeded with the analysis and included plaintiff's severe and non-severe impairments in the RFC determination, there is no basis to remand this matter based upon the ALJ's step two analysis").

Next, Plaintiff argues that the ALJ erred in assessing her stomach impairments as non-severe at step two. A non-severe impairment is "an impairment or combination of impairments [that] does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921. Plaintiff has had

---

[3]

Plaintiff states, "the ALJ made no findings as to handling or grasping." Plaintiff's Memorandum of Law at 7. This is clearly erroneous.

sporadic stomach problems.  T. 16.  However, even when the stomach problems were the most worrisome for Plaintiff, she failed to seek medical help – even though she was advised to go to the emergency department.  T. 358, 455.  Additionally, when she was prescribed Prilosec for that issue, she stopped taking it after a few weeks. T. 15.  Failure to "follow the prescribed medical advice which would remedy or reduce [her] impairments... is 'arguably inconsistent with [her] complaints....'" Torres Gutierrez v. Sec'y of Health, Educ. and Welfare, 572 F.2d 7, 8 (1st. Cir. 1978). Lastly, there is no medical testimony indicating that Plaintiff's stomach impairment would result in work related issues.  The ALJ can consider both what the record says and what it does not say. Dumas v. Schweiker, 712 F.2d 1454, 1553 (2d Cir. 1983).  For the foregoing reasons, this Court finds the ALJ committed no legal error in determining Plaintiff's stomach and wrist impairments were not severe impairments.

II.  The ALJ's RFC Determination was Supported by Substantial Evidence in the Record.

The ALJ considered Plaintiff's symptoms, the objective medical evidence, and other evidence based on C.F.R. §§ 404.1529 and 416.927 and Social Security Rulings 96-4 and 96-7.  T. 14.  The evidence considered by the ALJ included the medical reports prepared in relation to her physical and non-physical symptoms as well as the subjective statements made by Plaintiff.

16

The ALJ gave significant weight to the medical opinions of each doctor who treated Plaintiff in determining her RFC.  T. 18. Plaintiff's wrist impairment was determined to cause mild limitations in handling objects by consultative physician, Dr. Eurenius.  T. 399.  No other physician found a more severe impairment.  See T. 15-16.  No physician opined that Plaintiff's stomach issues and migraines would cause additional limitations. T. 15-16.  In fact, these impairments were all treated conservatively by Plaintiff's physicians.  See T.14-16. Further, Plaintiff failed to follow medical advice to visit the ED for her stomach issues and to get testing for her wrist impairment.  See T. 358, 372.  In light of this evidence, the ALJ determined that Plaintiff would be able to perform light work as defined in 20 C.F.R. 404.1567(b).  T. 14.  After reviewing the entire record, this Court finds that the ALJ's determination with respect to these impairments is supported by substantial evidence in the record.

Turning to the non-physical impairments, Plaintiff was first diagnosed with depression in 2008 by her primary care physician, Dr. Slobard, who prescribed Prozac.  T. 347.  In 2010, Plaintiff was again treated for depression, this time by PA Coakley.  T. 372. She reported that she had run out of Prozac "months and months" before.  T. 372.  Prozac was again prescribed.  T. 372.  In May 2010, consultative psychologist, Dr. Hochberg, assessed Plaintiff's depression and determined it did not satisfy the diagnostic

17

criteria of disability under Listing 12.04.  T. 385.  Specifically, he determined that Plaintiff had mild limitations in activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace.  T. 392.  Based on this evidence as well as evidence from Susan San Filippo, L.C.S.W. and PA Coaklea, diagnosing depression, the ALJ determined that the Plaintiff suffered some job related limitations due to her depression.  T. 17-18.  These limitations necessitate 1) a low stress environment, 2) occasional decision-making, 3) occasional changes in work setting, 4) occasional interaction with co-workers, 5) no interaction with the public, 6) no production pace, and 7) reminders of task twice daily. T. 14.  Plaintiff argues that the restriction requiring task reminders twice per day is "meaningless" and  "overly vague." Plaintiff's Memorandum of Law at 8.  However, this limitation, taken with the other limitations, indicated to the VE that there was a concentration limitation.  See Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009) (noting that a hypothetical to a VE where the Plaintiff is found to have a moderate concentration limitation must contain a limitation specifically addressing concentration). Reminder of tasks clearly relates to Plaintiff's concentration limitation as it is not related to pace, persistence or physical limitations.  Accordingly, this Court finds that the ALJ's RFC determination was supported by substantial evidence in the record.

**III.**  <u>The Vocational Expert's Testimony was Reliable</u>

Plaintiff argues that the ALJ erred at step five by relying on testimony elicited from the VE in response to an incomplete hypothetical question not supported by substantial evidence. As an initial matter, Plaintiff contends that due to errors in determining her RFC, the ALJ's "hypothetical question was not a complete and accurate portrayal of [her] limitations. . . ." Plaintiff's Memorandum of Law at 9 (citing <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1554 (2d Cir. 1983)). However, Plaintiff does not indicate what additional limitations the ALJ should have included in the hypothetical.  The Court interprets Plaintiff's brief as suggesting that the ALJ erred in declining to accept the VE's testimony, in response to a hypothetical posed by her attorney, that a person would not be able to perform any work if, in addition to the limitations contained in the ALJ's RFC determination, she would miss 3 days of work per month or were off-task 20 percent of the workday.  T.51.  There is no evidence in the record from any physician indicating that Plaintiff would have these limitations. <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say").  Thus, after reviewing the record, the Court cannot say that the ALJ's finding is unsupported by substantial evidence.

Next, the Plaintiff contends that the VE was incorrect in identifying jobs the Plaintiff would be capable of performing based on the limitations set by the ALJ.  Specifically, Plaintiff notes that the limitation requiring no pace work was disregarded by the VE, because all of the jobs the VE listed in step five involved pace work.  It appears that Plaintiff is arguing that the ALJ failed to resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles (DOT)*.

As an initial matter, the Plaintiff failed to bring any inconsistency between the VE's testimony and the DOT to the attention of the ALJ.  T. 51-52.  The ALJ is not required to conduct his own investigation of the VE's testimony in order to determine its accuracy.  <u>Ledford v. Astrue</u>, 311 F. App'x 746, 757 (6th Cir. 2008).  Further, the DOT does not necessarily trump the evidence of the VE.  <u>Id.</u>

Upon review of the record, I find that there is no discrepancy between the DOT and the VE's testimony.  As noted in Plaintiff's motion, all of the jobs listed as available for Plaintiff to perform in step five have a temperament requirement of "R-Performing repetitive work, or performing continuously the same work, according to set procedures, sequence or pace." Plaintiff's Memorandum of Law at 10-11 (citing U.S. Dept. Of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1993)).  The DOT does not distinguish between

20

the jobs requiring 1) repetitive pace work and 2) continuously performing the same work, according to set procedures, sequence, or pace.   Therefore, the evidence in the record does not support Plaintiff's claim that the VE erred in stating that Plaintiff, with the limitations noted by the ALJ, was capable of performing work in these positions.   Further, the Plaintiff had the opportunity to cross-examine the VE about this alleged conflict, but did not do so.   Accordingly, the Court does not find that the Commissioner committed legal error by relying on the testimony of the VE at step five.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.   Therefore, I grant the Commissioner's motion for judgment on the pleadings.   The Plaintiff's motion is denied, and her complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**


                                   s/Michael A. Telesca
                                   MICHAEL A. TELESCA
                               United States District Judge
Dated:    Rochester, New York

          November 21, 2013